MICHAEL L. NORTH, S.C.# 09656
Assistant County Counselor
Sedgwick County Courthouse
525 North Main, Suite # 359
Wichita, Kansas  67203
(316) 660-9340
E-Mail:  mnorth@sedgwick.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| Mark Hildebrant, | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. 12-1323-EFM-KGS |
| Justin Maxfield, Scott  Burdett; Andrew Dodge; | ) | |
| Eric Slay | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTIONS IN LIMINE AND SUPPORTING MEMORANDA

COMES NOW, Defendants, Sedgwick County Sheriff (hereinafter "Sheriff"), Justin

Maxfield, Scott Burdett; Andrew Dodge and Eric Slay and for their motion requests the Court

enter orders *in limine*, prohibiting plaintiffs through testimony, evidence or statement of counsel,

explicit or implied, purposeful or otherwise, from introducing exhibits or from making any

reference at any time in the trial of the instant case, to matters of the following nature:

1.    Any statement or reference by counsel for plaintiff that any judgment against

defendants Maxfield, Burdett, Dodge and Slay will or should be paid by

Sedgwick County.

2.      Any inquiry, reference by counsel, introduction of any written exhibit or solicitation of testimony, including expert testimony, intended to introduce the Sedgwick County Sheriff's Office's failure to conduct a review of this incident or discipline the defendants for their actions related to plaintiff.

3.      Any inquiry, reference by counsel, introduction of any written exhibit or solicitation of testimony concerning the defendant officers' conduct in other occurrences including but not limited to:

a.      Any disciplinary review by the Sheriff's Office Bureau of Professional Standards of defendants either before or subsequent to December 30, 2010.

b.      Any disciplinary review by the Sedgwick County Sheriff's Office Bureau of Professional Standards for allegations of excessive or unnecessary force.

c.      Any reference to policies, practices or procedures regarding internal affairs or professional standards review by the Sedgwick County Sheriff's Office

d.      Any questioning of any witness in this case as to whether they thought that an internal affairs investigation would or should be conducted for this matter, including any statement to the defendant officers to the effect that an internal affairs investigation would or should be conducted.

e.      Evidence or examination of any witness concerning any ruling in any prior criminal case by any state or federal court concerning motions to suppress,

motions *in limine* etc., in which defendants were involved as investigating or arresting officers.

4.     Any written or oral opinion by plaintiff's treating medical, nursing or hospital personnel including nurses, physicians and other medical providers concerning the nature and cause of plaintiff's injuries, the need for future treatment and the extent of future disability, unless such statements are contained in plaintiff's hospital or medical records.

5.     Testimony by plaintiff about conversations with his treating physicians concerning the nature of his disability and future treatment options, including but not limited to future medical, hospital or custodial needs; the cost of any such care, or the degree of impairment or disability that he can expect in the future.

6.     Any testimony by plaintiff or by plaintiff's treating physicians concerning his likelihood of future pain and suffering, economic damages from his injuries, permanent impairment, future medical expenses or similar matters not specifically contained in their medical records or in expert reports disclosed pursuant to Fed. R. Civ. P. 26 (a)(2).

7.     Any opinions by liability or damage experts not contained in reports submitted in compliance with Fed. R. Civ. P. 26 (a)(2).

8.     Any opinion by expert witnesses on the ultimate issue of whether excessive force was used or that a constitutional right was violated.

9.     Testimony by any witness regarding any prior or subsequent incidents or allegations of excessive force by any officers or employees of the Sedgwick County Sheriff's Office.

10.     Any evidence of prior or subsequent judgments or settlements in litigation of any type against Sedgwick County, the Sheriff's Office, and its employees or agents.

11.     Any claimed damages for past medical expenses for which the provider has discounted under a contractual agreement with Medicaid or Medicare.

12.     Any claimed damages for past medical expenses whose bills have not been submitted to counsel for defendants pursuant to discovery requests, or for which the parties have not entered into a stipulation as to the amount or admissibility of the bills.

13.     Any testimony from defendants, current or former employees of the Sheriff's Office or expert witnesses or introduction of documents concerning Sedgwick County Sheriff's Office academy training programs and whether the defendant deputies violated their academy or continued training in use-of-force or other issues in their manner of restraining plaintiff.

14.     Any testimony or introduction of documents concerning Sheriff's Office policies and procedures and whether the defendant deputies violated such policies.

15.     Any testimony by plaintiff directly, through examination of defendants or other current or former Sheriff's Office employees or through any expert testimony that defendant deputies could have used different, alternative or less intrusive methods of force.

16.     Any edited versions of on-board audio and video of the event recorded on officers' on-board recording systems except for demonstrative purposes.

17.     Any combined audio recordings taken from the Sheriff's deputies' patrol vehicle recordings.

18.     Any testimony by plaintiff or other witnesses that plaintiff requested, asked or begged the driver to stop or slow the vehicle being pursued or that he was an unwilling participant in the pursuit.

19.     Any testimony that plaintiff or the vehicle driver was not charged or convicted of any criminal offense arising from the incidents of December 30, 2010.


**Argument and Authority**

**I.      Reference to Potential Sources of Payment of a Judgment Should Be Prohibited. (Motion in Limine #1)**

It is well settled in the Federal Rules of Evidence and Kansas law that evidence of a defendant's insurance coverage is inadmissible at trial as being prejudicial. Fed. R.Evid. 411; *Ayers v. Christiansen*, 222 Kan. 225, 228, 564 P. 2d 458 (1977). Knowledge of the presence or absence of liability insurance prejudices the defendant by inducing the jury to decide the case on improper grounds.  The rationale for the rule was set forth in *Bott v. Wendler*, 203 Kan. 212, 226, 453 P.2d 100 (1969), which held: "Evidence tending to show that the defendant is covered by liability insurance is generally inadmissible because (1) it is usually irrelevant to any of the issues in the case and (2) it may tend to influence jurors to find against defendants or to bring excessive verdicts."  Any argument by plaintiff that Sedgwick County is required under law to pay a judgment against these defendants or should be "morally obligated" to pay a judgment would have a like effect.  The underpinnings of this prohibition against disclosure of insurance coverage should be equally applicable to an employer who self-insures its employees.  Any argument by plaintiff that Sedgwick County is required under law to pay a judgment against these defendants or should be "morally obligated" to pay a judgment would have a like effect.

II.    **Prior and Subsequent Internal Affairs Investigations of Deputies Maxfield, Burdett, Dodge and Slay, or Other Sedgwick County Deputies; Any Evidence of Judgments and Settlements Involving the Sheriff's Office, and Any Testimony of the Sheriff's Practices for Investigating Its Officers are Irrelevant and Prejudicial. (Motion in Limine #2, 3, 9, 10)**

Deputies Maxfield, Burdett, Dodge and Slay have been subject to internal affairs investigations by the Sheriff's Office for various regulatory infractions.    Some of the investigations resulted in disciplinary action.  Others did not.

Pursuant to Fed. R. Evid. 608, 403 and 404 (b), all reference or documentation relating to the internal investigations should be prohibited from admission into evidence for a variety of reasons. First, any incidents that were either subsequent to the event in question that occurred on December 30, 2010; were remote in time to the circumstances of this case, or which dealt with disciplinary violations unrelated to the officer's reputation for truthfulness should not be admitted under Fed. R. Evid. 608(a). Second, investigations for reasons unrelated to physical restraint or arrest of suspects are not relevant to the issues of this case.  Third, even if there were evidence that defendants had previously acted with excessive force when dealing with a suspect, the information would be irrelevant. Evidence of a party's commission of a prior civil wrong is inadmissible to prove conduct on the specific occasion that is the subject at trial except for specific purposes, such as motive or intent. Fed. R. Evid. 404(b). Fourth, any failure to investigate <u>this</u> incident for the deputies' use of force or to discipline them for violation of any internal policies of their office for use of force does not have any causal connection to plaintiff's alleged claim. *Cordova v. Aragon* , 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might also cause a future violation by sending a message to officers that

such behavior is tolerated. It does not, however, in and of itself constitute a causal connection in the immediate case"). *Trujillo v. Campbell*, 2012 WL 3609747, at *8 (D. Colo. 2012).

To permit the introduction of such evidence would be highly prejudicial and minimally probative of the issues and should be excluded from introduction into evidence under Fed. R. Evid. 403. Plaintiff has no municipal liability claim against the Sheriff's Office that it violated his civil rights in the manner in which it disciplined or supervised its officers. (Doc. # 40, Pretrial Order, p. 9). As such, neither the defendants nor any other witness should be questioned about whether an internal review of this incident was conducted or whether Sheriff's Office Policy or Procedure would normally require or recommend one.

### III.    Opinions of Plaintiff's Medical Providers Should Be Limited to Information Contained in Their Medical Records. Out-of-Court Statements Made to Plaintiff by His Treating Physicians Are Inadmissible Hearsay (Motion in Limine #4, 5, 6, 7)

Testimony from plaintiff about statements made to him by his physicians outside of court is inadmissible hearsay for which there is no exception under Fed. R. Evid. 803 or 804.

In the original discovery order filed in this case, plaintiff's deadline for the disclosures required under Fed. R. Civ. P. 26(a)(2), including any expert reports, was set for July 1, 2013. Plaintiff has identified none of his treating physicians or other medical providers as expert witnesses. Defendants have no dispute with plaintiff's medical or therapy providers testifying at trial on subjects contained in his or her respective medical records, which have been produced in discovery. The records would provide documentation of the plaintiff's treatment, his clinical presentation, including whatever pain and suffering he was experiencing, and opinions of the providers that were formed contemporaneously with such treatment. However, plaintiff should be prohibited from introducing testimony from treating physicians concerning such subjects as

future impairment, future medical treatment needs, future pain and suffering and plaintiff's ability to pursue employment if such matters are not part of the providers' medical records at the time care was rendered to plaintiff.  Any such testimony would be expert in nature as contemplated by Rule 26(a)(3) and would be highly prejudicial to defendants as creating unfair surprise without a specific designation of testimony or a written report.  Additionally, opinions expressed in medical records which plaintiff has failed to produce in discovery should also be prohibited.

## IV.    Expert Witness Testimony Presented by Plaintiff's Liability Expert Should Be Limited to Those Disclosures Made Pursuant to Rule 26. (Motion in Limine #7)

Plaintiff's expert report on liability issues is attached hereto as "Exhibit A".  This report was submitted to defense counsel pursuant to Rule 26 on or about June 28, 2013.  Plaintiff's opinions concerning the use of force by the defendant officers are summarized in his own report as follows:

1.    The officers did not translate from "lethal force" to "less than lethal use of force" as trained by the department.

2.    The officers were equipped with other forms of restraint that they could have used on plaintiff such as shocking with a tasers, spraying with aerosol irritants or striking with a baton

3.    The officers used gang-tackling as a form of arrest and control over the suspect which is an unreasonable form of force applied to a suspect and is not an accepted police practice unless there is no other viable alternative.

4.    The officers did not communicate or verbalize to the subject what was expected of him during the arrest.

5.    The officers failed to follow written protocols and standards as provided by the training doctrine of the department.

6.    The officers failed to follow general orders of the department regarding use of force policy and restraint policy.

7.    The officers failed to apply the use of force continuum as provided and trained by the department.

8.     The officers did not maintain an appropriate reactionary gap as provided in their training.

9.     The officers did not reasonably monitor the subject after the arrest.

10.    The officers did not position the suspect appropriately during restraint.

Some of the specifics of the expert's opinions are subject to other motions briefed below (Motions in Limine # 8, 13, 14, 15).  However, additionally, the testimony of the plaintiff's expert should be limited to what is contained in the report.  Opinions not disclosed in an expert's reports submitted to opposing counsel are inadmissible at trial. *Henderson v. AMTRAK.*, 412 Fed. App'x 74, 80-81 (10th Cir. 2011); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  Expert reports submitted under Fed. R. Civ. P. 26(a) are intended not only to identify the expert witness, but also to set forth the substance of the direct examination and are necessary to allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.  The function of the rule is defeated if the expert is permitted to express opinions at trial that materially stray beyond his report. When a party fails to comply with Rule 26(a)'s disclosure requirements, the general rule is that the party "is not allowed to introduce the expert witness's testimony ... at trial." *Lynch v. L'Oreal USA S/D, Inc.*, No. 11-cv-01343-FBJ-MWJ, 2012 WL 4356231, at *2 (D. Colo. 2012).

If plaintiff's position is that the expert witness disclosures described in 1-10 above are incomplete or inaccurate, then defendants respectfully request that plaintiff be required to describe any additional opinions with specific reference to the expert report so that the issues can be reviewed by the Court before offering the testimony at trial.  At the barest minimum, plaintiff needs to provide notice of an intention to offer undisclosed opinions so that their admissibility can be challenged before trial.

**V.    Expert Testimony of the Ultimate Issue of Whether a Constitutional Right Was Violated Should Be Excluded. (Motion in Limine #8)**

Under Fed. R. Civ. P. 702, expert opinions are admissible only if they are considered by the court to be helpful to the jury's understanding of the case and do not state legal conclusions. Implicit in Rule 702 is that the testimony offered (to be admissible) must be helpful to the finder of fact but may not encroach on the trial court's authority to instruct the jury. *A.E. v. Independent School Dist. No.* 9, 936 F.2d 472, 476 (10th Cir. 1991) ("[A]n expert may not state legal conclusions drawn by applying the law to the facts.").

In police excessive force cases brought under 42 U.S.C. § 1983, courts have narrowly allowed expert testimony only where the expert "did not give an opinion on whether [the officer's] conduct was unconstitutional. Rather, he stated his belief that the conduct was inappropriate 'based on [his] understanding of generally accepted police custom and practice in [that particular state] and throughout the United States." *See Zuchel v. City & Cnty. of Denver*, 997 F.2d 730,742–43 (10th Cir. 1993).   *Damiani v. Momme,* No. 11–2534, 2012 WL 1657920, at *2 (E.D. Pa. May 11, 2012) (expert in excessive force case may not "offer his opinion that the officers' conduct was unnecessary, punitive, [or] abusive" because such testimony "answers the very question asked to the jury, and the Court will not permit an expert to invade the province of the jury").

This is not to say that any opinion from a police "use of force" expert is inadmissible. While in some cases expert testimony on an alleged excessive use of force is unnecessary, expert testimony is valuable in cases where the circumstances surrounding the use of force and the techniques used by the officers are beyond the expertise of the lay juror. Experts are regularly permitted to testify about whether actions of defendants are consistent with generally accepted

police custom and practice or compliance with well-established police standards. *Zuchel,* 997 F.2d at 742–43; *Coleman v. Rieck,* 154 F. App'x 546, 549 (8th Cir. 2005); *Kladis v. Brezek,* 823 F.2d 1014, 1019 (7th Cir.1987).    However, testimony of this nature falls far short of editorializing on the ultimate issues to be decided by the jury.

Courts in the Tenth Circuit have gone so far as to draw a distinction between testimony of whether an officer's conduct was "reasonable" and whether it was in compliance with police practices generally. *Ortega v. City & Cnty. of Denver,* No. 11-cv-02394-WJM-CBS, 2013 WL 438579, at *3 (D. Colo. Feb. 5, 2013) (permitting expert to testify about whether the degree of force used was in compliance with established police standards, but not whether it was "reasonable"). Defendants do not necessarily advocate for such a strict interpretation as long as consistency is maintained between witnesses.

**VI.    Plaintiff's Claims for Damages Related to Past Medical Expenses Should Not Include Any Amounts Discounted by Medical Providers Under Contracts With Medicaid Or Medicare and Should Be Limited to Those Disclosed Pursuant to Rule 26 or In Response to Discovery Requests. (Motion in Limine #11, 12)**

**A.    Statement of Facts Concerning Plaintiff's Claimed Damages for Past Medical Expenses.**

i.    Plaintiff in discovery (Response # 6, Responses to Defendants' First Interrogatories, dated March 11, 2013; Response #1 and 2, Response to Defendants' Second Interrogatories, dated March 11, 2013) identifies various providers of past medical services to plaintiff. (attached as Exhibits "B" and "C")    This discovery request has never been updated with any more recent billings or identification of providers.

    ii.    Plaintiff's initial Rule 26 disclosures (attached as Exhibit "D") submitted to defendants on or about February 28, 2013 (Doc. # 21) identify medical bills to date of $257,100.40 as of November 2011.  Of this, $221,093.40 represents hospital bills from Wesley Medical Center. These disclosures have not been updated.

    iii.    This amount, $257,100.40 is contained in the Pretrial Order (Section 5.a.; Doc. # 40), as part of plaintiff's claimed damages, which has never been amended.

    iv.    Plaintiff states in discovery (Response #6, Defendants' First Interrogatories to Plaintiff, attached hereto as Exhibit "B") that Medicaid/Medicare has paid for the services.

    v.    The Wesley bill has a contractual adjustment of $105,408.81 leaving a balance of $115,636.59 (Exhibit "E" to this motion).

**B.**    **Plaintiff's Claimed Damages For Past Medical Expenses Should Be Limited to Actual Payments by Medicaid/Medicare and Should Not Include Discounts by the Provider.  (Motion in Limine #11)**

For purposes of this motion in limine, defendants will not challenge that portion of the claimed past medical of $257,100.40 that is <u>not</u> attributable to the Wesley Medical Center bill. This would include expenses from Sedgwick County EMS ($680.00), Our Lady of Lourdes Rehab Hospital ($33,928.00), Newman Regional Health ($1,399.00) (Exhibit "C").  Defendant contends, however, that any other claim for past medical expense for Wesley's services should be limited to the actual amount paid to by Medicaid/Medicare of $105,408.81.  Defendants' argument is in two parts. First, the amount of a write-off of a hospital bill under a contractual

adjustment with a third party is not a collateral source which is recoverable by plaintiff, Second, if the portion of the bill represented by write-off is technically part of a collateral source, the actual amount received by the provider under a contractual adjustment is still admissible into evidence as evidence of the reasonable value of the services.

i.      **"Write-Offs" Under the Federal Medicaid/Medicare Programs Are Not A Collateral Source Under Federal Law.**

Evidence of Plaintiff's medical bills and expense should be limited to the amounts paid after the contractual adjustment (referred generically as a "write-off").   Plaintiff's claim for medical expense is foreclosed here for two reasons.

First the bills were paid by Medicaid.   Federal common law applies and should hold payment by Medicaid is not a collateral source.[1]   Specifically, write-offs by health care providers through Medicaid, Medicare or private insurance are not covered by the collateral source rule. *Strahley v. Mercy Health Center of Manhattan, Inc.*, 2000 U.S. Dist. LEXIS 21247, 2000 WL 1745291; *Davis v. Management & Training Corp. Centers*, 2001 U.S. Dist. LEXIS 8361, 2001 WL 709380 (D. Kan. 2002); *Wildermuth v. Staton*, 2002 U.S. Dist. LEXIS 8034, 2002 WL 922137 (D. Kan. 2002).

ii.      **If Considered a Collateral Source, Defendants Should be Allowed to Introduce the Amount of the Accepted Medicaid Payment as Evidence of the "Reasonable Value" of Those Services.**

Second, the amount which a health care provider has agreed to accept in full satisfaction for services rendered in treatment of the plaintiff's injuries provides important evidence of the

---

[1] Defendants acknowledge Kansas law has now taken a different track.  But the better reasoned rule is stated in the federal cases that predate *Martinez v. Milburn Enters.*, 290 Kan. 572, 591 (Kan. 2010).

reasonable measure of value of medical care and expenses.  *Wildermuth*, 2002 U.S. Dist. LEXIS 8034, 2002 WL 922137.   A plaintiff should not be permitted to claim the entire billed amount, including the amount of the write-offs, as part of his or her economic damages for the reasonable value of recoverable medical services without the defendants having the opportunity to show the actual amount accepted by contract by the health care provider.   See, e.g., *Strahley*, 2000 U.S. Dist. LEXIS 21247, 2000 WL 174529; *Davis*, 2001 U.S. Dist. LEXIS 8361, 2001 WL 709380.

### C.     Any Recovery by Plaintiff For Past Medical Expenses Should Be Limited to Those Previously Disclosed. (Motion in Limine # 12)

Defendants' third argument is simple. Plaintiff's claim for past medical expenses should be properly limited to those disclosed in discovery, Rule 26 disclosures and the Pretrial Order. The claimed expenses for past medical have not been updated since the original discovery responses, the initial Rule 26 disclosures or the Pretrial Order. Any medical expense that has not been previously produced should be excluded from plaintiff's claimed damages at trial. Defendants have not had a fair opportunity to examine the necessity of any bills, invoices etc. as to whether they are reasonable or necessary or if they have been subject to the types of discounts identified in the arguments above.

### VII.   Training Material and Standard Operating Procedures of the Sedgwick County Sheriff's Office Should Be Excluded from Admission into Evidence as Irrelevant Under Fed. R. Evid. 402. (Motion in Limine #13, 14)

Former Sheriff Hinshaw has previously been granted summary judgment on the allegations that the Sheriff's Office training programs did not meet constitutional standards (Doc. # 56). As such, any evidence by introduction of written material or testimony of either fact or expert

witnesses concerning the Sheriff's Office training material or written policies and procedures should be prohibited from admission into evidence.

As noted above, sufficiently qualified expert testimony about an officer's compliance with generally accepted police custom and practice is admissible. However, it is well established in the Tenth Circuit that a law enforcement agency's own standard operating procedures, written protocols and standards, department orders and training program content are irrelevant to the issue of whether excessive force has been used by police officers and should be excluded from evidence at trial. Law enforcement departments typically establish disciplinary programs, written policies and training regimen that exceed constitutional minimums. To allow parties to use these as evidence in civil litigation would create a disincentive to adopt progressive or strict internal standards. Recognizing these principals, courts in this Circuit have repeatedly prohibited the attempt to introduce a department's own training materials and written policies as proof as a constitutional violation or to use them for impeachment purposes. *Tanberg v. Sholtis*, 401 F. 3d 1151, 1163-64 (10th Cir. 2005) ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant."); *Medina v. Cram* 252 F.3d 1124, 1133 (10th Cir. 2001); *Solis-Marrufo v. Bd. of Comm'rs for Cnty. of Bernalillo*, No. CIV 11-0107 JB/KBM, 2013 WL 1658278, at *19 (D.N.M. Mar. 29, 2013) ("Just as the Tenth Circuit in *Tanberg v. Sholtis* concluded that evidence of SOPs had a "minimal probative value," the Court believes that the probative value of inquiring into SOPs as a form of impeachment is minimal in this case"); *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1143 (D.N.M. 2012); *Mata v. City of Farmington* 798 F.Supp.2d 1215, 1230-35 (D.N.M. 2011) ("The Court will exclude any evidence that the Defendant Officers did not follow the FPD's or other generally accepted SOPs

and police training…Given the controlling law, the Court finds that evidence of violations of SOPs and training is irrelevant to whether Mata's and J.A.M.'s rights under the Fourth Amendment were violated"); *Diaz v. Salazar*, 924 F. Supp. 1088, 1097 (D.N.M. 1996) ("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983").

Plaintiff has listed written policies and material used for academy training of Sheriff's deputies as trial exhibits. While defendants are prepared, if necessary, to argue that their actions were completely in conformity with both, the trial should not venture off in this misdirection.

## VIII.  Evidence That the Defendant Deputies Had Alternative or Less Intrusive Means Available to Physically Restrain Plaintiff Should Be Excluded As Irrelevant Under Federal Rule 402. (Motion in Limine #15)

The "reasonableness standard" applicable to alleged Fourth Amendment violations for police excessive force does not require officers to use the "alternative, less intrusive means" in their efforts to physically restrain suspects. *Illinois v. Lafayette,* 462 U.S. 640, 647-48, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).  Based on statements in the Pretrial Order and plaintiff's expert report, it is expected that plaintiff will attempt to present evidence through expert testimony and cross-examination of the deputies that defendants should have used different tactics to physically restrain the plaintiff, including possibly pepper spray, tasers, baton strikes, etc. Defendants are prepared to argue why these alternative tactics would not have been appropriate and possibly more dangerous to the suspect, given their state of knowledge about his physical condition. However, this potential debate at trial is irrelevant and such testimony should be excluded because it does not accurately reflect Fourth Amendment standards on police use of force. *Marquez v. City of Albuquerque*,  399 F.3d 1216, 1222 (10th Cir. 2005) ("Here, the district court

held the testimony regarding the minimum use of force was irrelevant on the ground that the Fourth Amendment does not require police officers to use the least intrusive amount of force…As both of these grounds are supported by well-established precedent, it was not an abuse of discretion to exclude Kirkham's [plaintiff's expert] testimony"); *See also, Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("If we were to follow the dissent's approach and consider the expert's assertions regarding the failure to use pepper spray and other tactical measures, we would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene."); *United States v. Melendez-Garcia,* 28 F.3d 1046, 1052 (10th Cir.1994) ("…the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones."); *See also, Mata*, 798 F. Supp. 2d at 1215, 1226-35 (excluding evidence that the defendants could have used a less intrusive alternative to the force used as irrelevant); *Chamberlin v. City of Albuquerque,* No. 02–0603, 2005 WL 2313527, at *2 (D.N.M. July 31, 2005) (Browning, J.) (precluding the plaintiff's police procedures expert from testifying at trial regarding alternative and less intrusive means); *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1117 (D.N.M. 2012) (Fourth Amendment requires only that the defendant officers chose a "reasonable" method to end the threat that the plaintiff posed to the officers in a force situation, regardless of the availability of less intrusive alternatives).

Based on the prevailing authority, plaintiff cannot elicit testimony that only the minimal amount of force available to restrain and arrest is legally acceptable; that only necessary force meets constitutional standards, or that the potential success of less intrusive means renders the force used to be excessive.  Whether elicited through expert witnesses, the defendants or others, testimony to this effect is improper.  Similarly, evidence that the officers could have "de-

escalated" to milder forms of restraint or responded to perceived resistance with a less forceful alternative based on a scale or continuum should also be excluded.

## IX. Edited Video Taken from the Sheriff's Deputies Patrol Vehicles Should Not Be Admitted into Evidence. (Motion in Limine #16)

The most important evidence to be presented at trial is the on-board camera video and audio from the patrol vehicles of Deputies Burdett, Slay, Dodge, Maxfield and Crafton. They capture the original observation of the vehicle in which plaintiff was traveling, the twenty-five minute vehicle pursuit, the high-risk vehicle stop resulting in the "take-down" of plaintiff, conversations between the suspect and one or more of the deputies and the monitoring of plaintiff before he was taken away by ambulance.

There would not be much question that the video and audios are probative of the issues in the case and defendants have no objection to their admission into evidence and available to the jury for deliberations in their original or "raw" form; i.e., as they appear and sound as first created. The source of this motion *in limine* is over the admission into evidence of altered or edited versions.

Defendants have no objection to use of such techniques as slow motion, stop action, split screen or close-ups for demonstrative purposes at trial. However, the videos should only be provided to the jury in the original form.

## X. Combined Audio Recordings Taken from the Sheriff's Deputies' Patrol Vehicle Recordings Should Not Be Admitted into Evidence or Used for Demonstrative Purposes at Trial. (Motion in Limine #17)

By far the largest objection that defendants have is over combined audio from the recording devices that each individual officer carried with him on his uniform. This in essence,

captures what each individual device records and combines it into one single recording to make it sound as though each individual officer heard what every other officer heard. This is completely misleading and should be prohibited from admission or presentation for two reasons. First, these are separate defendants. Each individual defendant's own liability must be assessed in part on what he heard from other offices and what they heard from plaintiff's own mouth. It is fundamentally unfair to attribute what another defendant may have heard (or at least what was recorded) when the two may have been a great distance away. It is even more unfair to attribute collective knowledge to all defendants based on what one may have heard. Using a recording that combines all recordings creates this very impression. By illustration, the potential for confusion in this regard is evident in the discovery depositions taken of the defendants. (Slay deposition, Exhibit "F", p. 23, ln. 21-p. 24, ln. 21; p. 39, ln. 6-p. 41, ln. 18; Maxfield deposition, Exhibit "G", p. 42, ln. 3-ln. 24; p. 43 ln. 24-p. 45, ln. 4; Burdett deposition, Exhibit H", p. 7, ln. 1-17).

Second, the use of combined audios will lengthen the presentation of evidence at trial. To clarify what the individual officers heard, in either cross-examination or redirect by counsel for defendants, it will be necessary to use plaintiff's audio recordings and then pull up the ones from the vehicle systems, play the audio at the same point in time and then have the witness compare the recordings. It also will necessitate showing the video as to the location of the witness, in relation to the "speaker", to demonstrate why he could not have heard the statement. This will have to be done at each point in the video referenced in the witnesses' examination. Having the two sets for comparison by the jury later on, during deliberations will additionally be cumbersome.

For reasons of fairness to the defendants and in the interest of judicial economy, edited audios should not be permitted to be used at trial.

**XI.    Claims by Plaintiff that He Requested, Asked or Begged the Driver to Stop or Slow the Vehicle Being Pursued By the Defendant Deputies Are Inadmissible Hearsay and Irrelevant to the Issues of Whether Excessive Force Was Used and Should Be Excluded from Admission Into Evidence. (Motion in Limine #18)**

It is expected that plaintiff will seek to introduce his own testimony that during the twenty-three minute pursuit he asked the driver to either stop or slow down enough for him to get out of the vehicle.  Presumably, this evidence is introduced to demonstrate that he was not a willing participant in the pursuit and committed no obvious, serious crime that warranted any use of force by the defendants or the degree of force that resulted here. Defendant's position is that this evidence is irrelevant.

The first problem with this evidence is that it is probably inadmissible hearsay under Fed. R. Evid. 802.

Additionally, it has been well settled that cases of unnecessary or excessive force during an arrest must be analyzed under the standards of the Fourth Amendment's "objective reasonableness standard".  *Graham v. Conner,* 490 U.S. 388, 394, 109 S. Ct. 1865 (1989); *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151 (2001); *Stuart v. Jackson*, 24 Fed. App'x 943, 950 (10th Cir. 2001).  Courts, in applying the reasonableness of an officer's conduct, have determined consistently that it must be assessed from the perspective of a reasonable officer on the scene, recognizing the fact that the officer may be forced to make split-second judgments under stressful and dangerous conditions.  *Graham*, 490 U.S. at 396-97; *Gross v. Pirtle,* 245 F.

3d 1151, 1158 (10th Cir. 2001); *Medina v. Cram,* 252 F. 3d 1124, 1131 (10th Cir. 2001); *Finney v. Metzger*, 175 F. Supp. 2d 1296, 1304 (D. Kan. 2001).

Only information that was known to the officers at the time is examined in making a determination of whether an officer's conduct was reasonable under the circumstances. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987); *Weigel v. Broad,* 544 F.3d 1143, 1152 (10th Cir. 2008); *Cardall v. Thompson*, 845 F.Supp.2d 1182, 1190 (D. Utah 2012). Here, the content of any conversations between the driver and plaintiff during the chase were unknown to the officers who later have to make an instant decision about appropriate degrees of force once the vehicle has come to a stop. It is only what the officers know or should reasonably know about the circumstances that are relevant. Any actions by plaintiff when he exited the vehicle, including telling the officers that he was an unwilling participant in the chase, would be probative of whether the defendants reasonably believed that he was likely to resist, escape or be a danger in deciding whether and how much force is needed. However, any conversation in the truck, between the driver and plaintiff, would be unknown by the officers and cannot be considered part of their perspective at the scene.

## XII. The Lack of Any Criminal Charges Filed Against Plaintiff or the Driver of the Fleeing Vehicle from the Incident Is Irrelevant and Should Be Excluded from Admission into Evidence. (Motion in Limine #19)

Through either expert testimony or his own direct examination, plaintiff will likely attempt to introduce evidence that neither the driver of the truck eluding the defendants nor himself were charged with a crime resulting from the incident of December 30, 2010. Defendant submits that this evidence is both irrelevant and prejudicial. As noted above (*Weigel*, *Cardall*, *Anderson*), only information available to the officers is relevant in determining the totality of the

circumstances leading up to the use of force. Whether or not the state or local prosecutors decided at some later time to file criminal charges is irrelevant to the determination of the circumstances confronting the officers at the time they believed, reasonably or otherwise, that force needed to be applied to restrain plaintiff. There are many reasons why a prosecutor's office would decline to initiate a criminal complaint including the office's work load at a given time, cooperation by complaining witnesses, and, not the least of which, the physical condition of plaintiff. None of these factors would have any appreciable relevance to the severity of the offense from the perspective of the officer on the scene. Additionally, the individual defendants here are not in privity with the State of Kansas in the decision whether to prosecute a case or the ultimate disposition if a case is brought. *Kinslow v. Ratzlaff*, 158 F. 3d 1104, 1106 (10th Cir. 1998).

The ultimate disposition of criminal charges would have no bearing on the issue of whether the defendant used excessive force in making an arrest. *Hull v. Wollmershauser* No. 07-CV-417-TCK-TLW, WL 1587333, at *2-3 (N.D. Okla. June 5, 2009). From plaintiff's perspective, an eventual conviction of some criminal offense would have no probative value to a claim of excessive police force; first, because a suspect could eventually be found guilty of a serious crime and still have been unnecessarily beaten, and second, because the criminal case would likely include facts unavailable to the officers at the time of the arrest for which they should not, in retrospect, be able to incorporate into the "reasonableness" of his or her decision at the time. Similarly, a dismissal or failure to charge in the first place is equally irrelevant.

## Conclusion

Defendants, therefore, respectfully request that the Court enter orders *in limine*, prohibiting plaintiff, through testimony, evidence or statement of counsel, explicit or implied,

purposeful or otherwise, from introducing exhibits or from making any reference at any time in the trial of the instant case, to the aforementioned matters.

s/*Michael L. North*

Michael L. North #09656
Attorney for Defendants
Assistant County Counselor
Sedgwick County Courthouse
525 North Main, Suite # 359
Wichita, Kansas  67203
(316) 660-9340

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Randy Rathbun

Molly Gordon

Ed Hund

Randy Troutt

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

None

s/*Michael L. North*

Michael L. North #09656
Attorney for Defendants
Assistant County Counselor
Sedgwick County Courthouse
525 North Main, Suite # 359
Wichita, Kansas  67203
(316) 660-9340